1  **WO**  NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Evangelical Lutheran Good Samaritan Society,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Thomas J Betlach,<br><br>　　　　　　Defendant. | No. CV-16-08169-PCT-JJT<br><br>**ORDER** |

At issue is the Defendant Thomas J. Betlach's Motion to Dismiss (Doc. 32, MTD) Plaintiff Evangelical Lutheran Good Samaritan Society's Amended Complaint (Doc. 31, Am. Compl.). After considering the Motion, Plaintiff's Response (Doc. 33, Resp.), and Defendant's Reply (Doc. 34, Reply), the Court will grant Defendant's Motion for the reasons that follow.

**I.    BACKGROUND**

Plaintiff alleges the following facts in the Amended Complaint. Plaintiff Evangelical Lutheran Good Samaritan Society d/b/a Prescott Village Center ("Prescott Village" or "Plaintiff") claims that Defendant Thomas J. Betlach, Director of the Arizona Health Care Cost Containment System ("AHCCCS"), mishandled the Medicaid benefits application and improperly denied pre-eligibility benefits requests of Ms. Polly Olson ("Ms. Olson") for her long term medical care under the state's Medicaid program. Ms. Olson was admitted to Prescott Village, a skilled nursing facility, on or around October 29, 2013. (Am. Compl. ¶ 15.) Ms. Olson, who was admitted at 91 years of age,

has numerous medical conditions that require 24-hour care and assistance at Prescott Village. (Am. Compl. ¶ 17.) She suffers from significant physical impairments and dementia, a mental illness that substantially impairs her ability to think, communicate, care for herself, and make financial and personal decisions. (Am. Compl. ¶ 16.)

At some point after her admission, Ms. Olson became insolvent and in need of government Medicaid assistance. (Am. Compl. ¶ 19.) On April 7, 2014, about five months after moving to Prescott Village, she or her representative applied for Medicaid benefits with AHCCCS. (Am. Compl. ¶ 20.) Plaintiff alleges that the AHCCCS application for Medicaid assistance "does not include a space or other designation to request benefits or medical reimbursement for any period prior to the application date." (Am. Compl. ¶ 21.) AHCCCS approved Ms. Olson's application for Medicaid assistance on June 30, 2014, effective April 2014, and determined her monthly "share of cost." (Am. Compl. ¶ 22.) The approval notice stated that as of the date of her eligibility, she would owe Plaintiff $1,736.67 each month—her patient liability ("PL")—based on AHCCCS's determination of her monthly income, including $1,063.34 from a monthly annuity payment. (Am. Compl. ¶¶ 22-25.) Plaintiff alleges that Ms. Olson could not access the annuity payments that were being sent to her residence on account of her dementia and because her adult daughter Jill misappropriated the annuity funds, thereby diverting them from the costs of Ms. Olson's medical care. (Am. Compl. ¶¶ 26-28.)

Plaintiff claims that despite the unavailability of the annuity payments to Ms. Olson, AHCCCS included the payments in calculating her income for the purposes of the PL determination. (Am. Compl. ¶ 30.) Ms. Olson has an outstanding balance of $46,864.76 for her care at Prescott Village. (Am. Compl. ¶ 32.) The majority of this amount, $32,587.33, is for care prior to her eligibility date for AHCCCS benefits (October 2013 through April 2014). (Am. Compl. ¶ 33.) The remaining balance, $14,277.43, constitutes Ms. Olson's PL after her eligibility date, April 1, 2014. (Am. Compl. ¶ 34.)

When Plaintiff became aware of Jill's misappropriation of her mother's funds, it took action to become the "representative payee" of Ms. Olson's annuity as of April 1, 2015. (Am. Compl. ¶ 31, Ex. C.) Plaintiff then filled out a new AHCCCS application for benefits, identifying itself as Ms. Olson's "authorized representative" for the eligibility process. (Am. Compl., Ex. A.) In November 2015 and April 2016, Plaintiff requested that AHCCCS remedy the issue of the unpaid services by permitting an income deviation based on Ms. Olson's unavailable annuity payments. (Am. Compl. ¶ 36.) Plaintiff claims that AHCCCS has "refused to allow for deviated liability of medical expenses incurred by Ms. Olson at Prescott Village from October 2013 through April 2014 [prior to her eligibility date] by failing to act on the request, failing to make a decision, and generally refusing to recognize the ability under federal law to deviate liability of medical expenses to allow Ms. Olson's income to pay the non-covered medical expenses she incurred prior to her eligibility for Medicaid benefits." (Am. Compl. ¶ 37.)

In AHCCCS's response to Plaintiff's hearing requests in a Pre-Hearing Summary, AHCCCS states that the hearing requestor—Plaintiff—is not an authorized representative of Ms. Olson. (Am. Compl., Ex. G.) The Pre-Hearing Summary also notes that the original application for benefits included a notice explaining that "a hearing can be requested if you do not agree with the decision," providing the ways to submit a hearing request, and setting forth an administrative deadline of August 4, 2014—two years earlier than Plaintiff's eventual request for a hearing on Ms. Olson's behalf. (Am. Compl., Ex. G.) Further, the Pre-Hearing Summary states that Ms. Olson's authorized representative at the time of her original application made no request for benefits prior to April 2014. (Am. Compl., Ex. G.) Plaintiff complains that AHCCCS has a policy and practice of refusing to deduct unavailable resources from a Medicaid applicant's income calculations by pointing out that the Arizona Long Term Care System ("ALTCS") does not have a process for income deviation for past expenses. (Am. Compl. ¶¶ 38-39.) Although, on the whole, Plaintiff's allegations are not altogether clear, Plaintiff

essentially seeks compensation from AHCCCS for the unpaid balances related to Ms. Olson's care at Prescott Village both before and after her benefits eligibility date.

Based on these allegations, Plaintiff raises four Counts against Defendant: (1) declaratory judgment; (2) violation of Title II of the "Americans with Disabilities Act" ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (3) violation of 42 U.S.C. § 1983; and (4) temporary and permanent injunction. (Am. Compl. ¶¶ 80-103.) Defendant now moves to dismiss on the grounds of lack of jurisdiction due to lack of standing, Eleventh Amendment immunity, failure to exhaust administrative remedies, failure to comply with the statute of limitations, and failure to state a claim. (MTD at 3.)

## II. LEGAL STANDARDS

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

A motion to dismiss for lack of standing is also properly brought as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139-40 (9th Cir. 2003). In that instance, the plaintiff bears the burden of establishing standing by a preponderance

of the evidence. *See Sierra Club v. U.S. Envtl. Prot. Agency*, 762 F.3d 971, 976 (9th Cir. 2014); *Ervine v. Desert View Reg. Med. Ctr. Holdings, LLC,* 753 F.3d 862, 868 (9th Cir. 2014). A jurisdictional challenge under Rule 12(b)(1) may be made or defended by presenting extrinsic evidence. *Colwell*, 558 F.3d at 1121; *Warren*, 328 F.3d at 1139.

"[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513-14 (2006).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III. ANALYSIS**

    **A. Standing**

Defendant first moves to dismiss Plaintiff's claims for lack of standing. To bring a judiciable lawsuit into federal court, Article III of the Constitution requires that a plaintiff have "the core component of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements, a plaintiff must show that it

suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant," and that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). In the complaint, the plaintiff must "alleg[e] specific facts sufficient" to establish standing. *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). Accordingly, courts should dismiss a plaintiff's complaint if it has failed to provide facts sufficient to establish standing. *See, e.g., Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010).

Here, Plaintiff has satisfied the Article III standing requirements by alleging facts that it suffered injury when Defendant did not pay it for medical care it provided to Ms. Olson, that Defendant's conduct caused the injury, and that prevailing on its claims in this lawsuit could redress the injury. But Defendant's argument for dismissal (MTD at 7-9) is one more aptly brought as a challenge to Plaintiff's status as the real party in interest under Federal Rule of Civil Procedure 17(a) rather than one based on Plaintiff's Article III standing. "Even where plaintiffs meet the bare minimum of the Article III case or controversy requirement, [courts] typically decline to hear cases asserting rights properly belonging to third parties rather than the plaintiff." *McCollum v. Calif. Dep't of Corr. & Rehab.*, 647 F.3d 870, 878-80 (9th Cir. 2011); *see also Mills v. United States*, 742 F.3d 400, 406-07 (9th Cir. 2014). Although a plaintiff may bring a case on behalf of a third party in certain instances in which the plaintiff is closely related to the third party, Plaintiff here has not made the required showing. *See McCollum*, 647 F.3d at 879.

Rule 17(a) permits a plaintiff to prosecute a suit "without joining the person for whose benefit the action is brought" if the plaintiff is an executor, administrator, guardian, bailee, trustee of an express trust, or a party either authorized by statute or in whose name a contract has been made to act for another's benefit. Plaintiff argues that it is authorized by Medicaid regulations—and particularly 42 C.F.R. § 435.923—to act as a representative for Ms. Olson with regard to her eligibility for Medicaid benefits. However, as Defendant points out (Reply at 2), the extent of a representative's authority

is defined by the agreement between the representative and the Medicaid applicant—a proposition clearly stated in the regulations Plaintiff itself cites (Resp. at 7-9). Here, the agreement between Ms. Olson and Plaintiff provides only that Plaintiff may "complete and sign [Ms. Olson's] application," "provide any documents requested," "sign on [Ms. Olson's] behalf" to permit entities to provide AHCCCS with personal information, and "assign [Ms. Olson's] rights to medical reimbursement claims to AHCCCS." (Doc. 31-6 at 38, Authorization.) The Authorization does not provide that Plaintiff may bring claims against Defendant on Ms. Olson's behalf in this Court challenging Defendant's procedures and the content of Defendant's application forms, and it does not permit Plaintiff to bring civil rights claims, such as those Plaintiff raises under the ADA and Rehabilitation Act, on Ms. Olson's behalf. Plaintiff has acted beyond the scope of the Authorization in bringing the claims in this lawsuit on Mr. Olson's behalf, and the Court must therefore find that Plaintiff is not the real party in interest under Rule 17.[1]

Rule 17(a)(3) provides that the Court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Thus, if the Court allows this action to proceed, it will give Plaintiff time to resolve the Rule 17(a) defect in its claims before dismissing the action.

**B.  Eleventh Amendment Immunity**

The posture of this case and Defendant's remaining arguments for dismissal are muddled by the fact that this Plaintiff is not the real party in interest to the claims. In the interest of judicial economy, however, the Court will nevertheless address Defendant's remaining arguments to the extent possible.

---

[1] In addition to lacking the authority to raise its claims on behalf of Ms. Olson in this lawsuit, Plaintiff has provided no basis for its authority to seek injunctive relief on behalf of "similarly situated residents," as it does in Count 1 of the Amended Complaint. (*See* Am. Compl. ¶ 83.) Any such claim is dismissed.

In his Motion to Dismiss, Defendant next argues that, because Plaintiff brings suit against him in his official capacity as Director of AHCCCS, Plaintiff's claims for compensatory and punitive damages are barred by the Eleventh Amendment. In the Amended Complaint, Plaintiff prays for compensatory and punitive damages in conjunction with its claims under Title II of the ADA and § 504 of the Rehabilitation Act (Count 2) and § 1983 (Count 3).[2]

Title II of the ADA and § 504 of the Rehabilitation Act both authorize suit for damages against a state. *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 792-93 (9th Cir. 2004) (*per curiam*). Accordingly, the Court will deny Defendant's Motion with regard to Eleventh Amendment immunity to Count 2.

In Count 3, in addition to injunctive relief, Plaintiff prays for "an Order automatically approving Plaintiffs' [sic] Medicaid benefits retroactive to October 29th, 2013" as well as "an Order requiring the Defendant to make [Ms. Olson] whole by granting other appropriate relief, including compensatory and punitive damages, interest, attorneys' fees, expenses and costs." (Am. Compl. at 23-24.) It is now well-settled that, "though a § 1983 action may be instituted by public aid recipients . . . , a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (internal citations omitted); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58,

---

[2] Compensatory and punitive damages are not implicated in Counts 1 and 4. In Count 1, Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201("Declaratory Judgment Act") and Federal Rule of Civil Procedure 57 that AHCCCS should offset Ms. Olson's liability for medical costs prior to her Medicaid liability, "afford similarly situated residents" the same offset, and "exclude Ms. Olson's misappropriated annuity payments as an 'unavailable' income resource for the purpose of calculating her Medicaid eligibility." (Am. Compl. ¶ 83.) The Declaratory Judgment Act is simply a procedural vehicle to obtain a declaration of rights in "a case of actual controversy." Count 4, in which Plaintiff seeks injunctive relief related to the wrongs alleged in Counts 2 and 3, is not a claim, but rather a remedy. *See Jenkins v. MCI Telecomms. Corp.*, 973 F. Supp. 1133, 1139 n.10 (C.D. Cal. 1997).

71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983, and thus cannot be sued for damages). Thus, to the extent it seeks damages, Plaintiff's § 1983 claim (Count 3) is barred by the Eleventh Amendment. Any future claim by Ms. Olson (or a duly authorized representative) would be similarly barred.

### C. Failure to Exhaust Administrative Remedies

Defendant contends that Plaintiff did not exhaust its state administrative remedies in seeking Medicaid benefits on behalf of Ms. Olson, in violation of the Medicaid statute, 42 U.S.C. § 1396(a)(3), and the regulations implementing it, 42 C.F.R. § 431.200 *et seq.* A plaintiff claiming a violation of § 504 of the Rehabilitation Act, as Plaintiff does in Count 2, need not first exhaust state administrative remedies before bringing the claim in this Court. *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990). Likewise, exhaustion of state administrative remedies is not required before a plaintiff brings a § 1983 claim in this Court, as Plaintiff does in Count 3. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982). The Court will therefore deny Defendant's Motion with regard to a failure to exhaust state administrative remedies.

### D. Statute of Limitations

Defendant also argues that Plaintiff's § 1983 claim is barred by the applicable statute of limitations because Plaintiff brought this suit more than two years after AHCCCS notified Ms. Olson of her share of cost associated with her Medicaid benefits.[3] Because § 1983 does not include a statute of limitations, courts apply the most appropriate state statute of limitations in construing the timeliness of a § 1983 claim. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004) (citation omitted). For § 1983 claims in Arizona, courts use the statute of limitations established for personal injury claims, which is two years from the date of the incident giving rise to the cause of action. *Id.*; A.R.S. § 12-542.

---

[3] Defendant does not argue that any of Plaintiff's other claims are time-barred.

A statute of limitations period begins to run on the date on which the plaintiff's claim "accrues." *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). Federal law determines when a federal civil rights claim accrues. *Morales v. City of Los Angeles*, 214 F.3d 1151, 1154 (9th Cir. 2000). Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the actual injury" that is the basis of the cause of action. *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). "[T]he 'discovery rule,' which postpones the beginning of the limitations period from the date the plaintiff is actually injured to the date when [it] discovers (or reasonably should discover) it has been injured . . . is already incorporated into federal accrual law." *Id.* at 1048. The federal discovery rule requires "discovery of the injury, not discovery of the other elements of a claim" for a cause of action to accrue. *Rotella v. Wood*, 528 U.S. 549, 555 (2000); s*ee also, generally, Hensley v. United States*, 531 F.3d 1052, 1057 (9th Cir. 2008) (holding that a plaintiff's lack of knowledge of the identity of the tortfeasor does not toll accrual of a plaintiff's cause of action).

Here, accrual of the § 1983 claim is not predicated on Plaintiff's discovery of the alleged injury to Ms. Olson, because Plaintiff is not the real party in interest. Instead, accrual will depend on the discovery of the alleged injury by Ms. Olson, or a duly authorized representative on her behalf. Based on the allegations in the Amended Complaint, the Court cannot determine when Ms. Olson's § 1983 claim accrued or if it is time-barred. As a result, the Court must deny Defendant's Motion with respect to the statute of limitations bar.

### E.  Failure to State a Claim

Finally, Defendant argues that Plaintiff fails to state a claim under Rule 12(b)(6) for violations of Title II of the ADA and § 504 of the Rehabilitation Act (Count 2) and § 1983 (Count 3).

With regard to Count 2, "[t]here is no significant difference in the analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citing 42 U.S.C. § 12133).

To make out a prima facie case under either Act, a plaintiff must show (1) she is a "qualified individual with a disability;" (2) she was "excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity;" and (3) "such exclusion, denial of benefits, or discrimination was by reason of [her] disability." *Rodde v. Bonta*, 357 F.3d 988, 995 (9th Cir. 2004) (internal citations omitted).

Defendant contends that Plaintiff alleges no connection between Defendant's actions and Ms. Olson's disability because AHCCCS offered Ms. Olson the same benefits it offers non-disabled applicants and its determination of pre- and post-eligibility expenses have nothing to do with an applicant's disability. (MTD at 14-15.) Plaintiff points to the latter contention—that AHCCCS does not consider the applicant's disability in making its benefits determinations—as the basis of its claim. Plaintiff alleges, although inartfully, that Ms. Olson suffers from a number of severe medical conditions, including dementia, and that her resulting disability rendered her incapable of managing her finances and, more specifically, collecting the annuity payments that AHCCCS included in its calculation of her share of cost associated with her Medicaid benefits. Plaintiff essentially alleges that AHCCCS discriminated against Ms. Olson by failing to account for her disability in its application and benefits review processes. As a result, Plaintiff, if it were the real party in interest, has alleged sufficient facts to plausibly state a claim for a violation of the ADA and § 504 of the Rehabilitation Act.

With regard to Count 3, neither Defendant's nor Plaintiff's briefs provided any guidance to the Court regarding the standard for an individual to bring a § 1983 claim against a state entity predicated on a provision of the Medicaid statute. Here, Plaintiff apparently attempts to bring a § 1983 claim under 42 U.S.C. § 1396a(r)(1)(A). (Resp. at 14.) A plaintiff who is a Medicaid recipient makes out a § 1983 claim by asserting "the violation of an individually enforceable *right* conferred specifically upon [her], not merely a violation of federal law or the denial of a *benefit* or *interest*, no matter how unambiguously conferred." *Sanchez v. Johnson*, 416 F.3d 1051, 1062 (9th Cir. 2005)

(concluding that an individual cannot bring a § 1983 claim for a state's alleged failure to comply with 42 U.S.C. §1396a(a)(30)(A) because it did not confer an individual right, and noting that, while some sections of 42 U.S.C. § 1396a address individual Medicaid recipients, others are "concerned with the State as administrator and only indirectly with recipients and providers as beneficiaries of the administered services," who therefore do not have an enforceable right under § 1983). Upon the Court's review, § 1396a(r)(1)(A) is akin to § 1396a(a)(30)(A); in neither has Congress, "with a clear voice, intended to create an individual right that either Medicaid recipients or providers would be able to enforce under § 1983." *Sanchez*, 416 F.3d at 1062. Accordingly, the Court will grant Defendant's Motion with regard to Plaintiff's failure to state a § 1983 claim.

**IV. CONCLUSIONS**

Plaintiff is not the real party in interest to the claims in the Amended Complaint, and the Court will therefore dismiss all of Plaintiff's claims but allow Plaintiff 30 days to try to remedy the Rule 17(a) defect. However, for the reasons set forth above, the Court will dismiss the § 1983 claim (Count 3) with prejudice for lack of a cognizable legal theory, and in any event the compensatory and punitive damages Plaintiff sought in that claim are barred by the Eleventh Amendment and the claim may be barred by the applicable statute of limitations. If it were the real party in interest, Plaintiff stated a claim under Title II of the ADA and § 504 of the Rehabilitation Act (Count 2), and Plaintiff was not required to exhaust administrative remedies before bringing that claim.

IT IS ORDERED granting in part and denying in part Defendant's Motion to Dismiss Amended Complaint (Doc. 32). The Amended Complaint is dismissed with leave to amend if the real party in interest can ratify, join, or be substituted into the action. The § 1983 claim (Count 3) is dismissed with prejudice.

IT IS FURTHER ORDERED that Plaintiff and/or the real party in interest shall file any Second Amended Complaint within 30 days of the date of this Order.

. . . .

. . . .

IT IS FURTHER ORDERED that the Clerk is directed to close this case without further Order of the Court if Plaintiff and/or the real party in interest fails to timely file a Second Amended Complaint.

Dated this 3rd day of August, 2017.

*Honorable John J. Tuchi*
United States District Judge